# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA

KEYETTE GILLAM, §
§
**Plaintiff** §
§
V. § C.A. No. 5:14-CV-134 BO
§
LABORATORY CORPORATION OF §
AMERICA HOLDINGS § **FILED**
§
AND § MAR 0 7 2014
§
§ JULIE A. RICHARDS, CLERK
LABORATORY CORPORATION OF § US DISTRICT COURT, EDNC
AMERICA, § BY_____ DEP CLK
§
**Defendants** § (JURY TRIAL DEMANDED)

## ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW Plaintiff, Keyette Gillam, (hereinafter, Plaintiff or "Gillam") filing her Original Complaint complaining of Defendants, Laboratory Corporation of America Holdings and Laboratory Corporation of America, (hereinafter, collectively called "Defendants" or "LabCorp" unless otherwise specified) and in support thereof would show as follows:

## I.
## JURISDICTION, PARTIES, AND VENUE

1. This Court has jurisdiction over the causes of action alleged by Plaintiff pursuant to 42 U.S.C. §1981 ("Section 1981") and Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

-1-

2. Keyette Gillam ("Gillam" or "Plaintiff") resides in Fayetteville, Cumberland County, North Carolina. Gillam is African-American and is protected by 42 U.S.C. §1981 and Title VII. Gillam was at all relevant times an employee within the meaning of the applicable statues.

3. Defendant, Laboratory Corporation of America Holdings, operates in North Carolina and may be served by serving its registered agent at Corporation Service Company, 327 Hillsborough Street; Raleigh, North Carolina 27603. Defendant was at all times GILLAM's employer within the meaning of Section 1981 and Title VII.

4. Defendant, Laboratory Corporation of America, operates in North Carolina and may be served by serving its registered agent at Corporation Service Company, 327 Hillsborough Street; Raleigh, North Carolina 27603. Defendant was at all times GILLAM's employer within the meaning of Section 1981 and Title VII. Hereinafter, Laboratory Corporation of America Holdings and Laboratory Corporation of America will collectively be referred to as "LabCorp" or "Defendants."

5. Defendants engaged in an industry affecting commerce and employed more than fifteen (15) regular employees.

6. The employment practices alleged to be unlawful herein were committed within the Eastern District of North Carolina, Western Division. Venue is appropriate in this Court.

### VICARIOUS LIABILITY--RESPONDEAT SUPERIOR

7. Whenever in this pleading it is alleged that Defendants did any act or thing, or failed to do any act or thing, it is meant that Defendants' officers, owners, servants, employees, or representatives and management did such act or thing, or failed to do such act or thing, or that such act or thing or omission was done in the course and scope of that person's employment at LabCorp, or in the furtherance of Defendants, Labcorp's interests, or with the full authorization, permission, tolerance, and/or ratification of Defendants, or was done by an authorized member of management of Defendants or was done in the

normal routine of the accepted, tolerated, or permitted conduct, customs, and/or practices of Defendants' officers, owners, servants, employees, management or representatives.

## II.
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

**8.** Gillam filed an original Charge of Discrimination ("Charge") with the United States Equal Employment Opportunity Commission (hereinafter "EEOC") on or about July 5, 2012. In that Charge, No. 433-2012-03176, and any amendments and/or attachments thereto, Gillam asserted that Defendant discriminated against her based on her race in violation of Title VII of the Civil Rights Act of 1964, as amended.

**9.** After investigating Gillam's Charge, the EEOC issued Gillam a RIGHT TO SUE LETTER on or about December 5, 2013. Gillam received the RIGHT TO SUE LETTER on or about December 9, 2013. Gillam has exhausted her administrative remedies and files this suit within the statutory limitations period.

## III.
## FACTUAL BACKGROUND

**10.** Gillam began her employment with LabCorp on or about January 23, 2010. She was a dedicated, hard-working, and highly sought-after phlebotomist during her service with LabCorp. Gillam was so compassionate, professional, and skilled that many patients followed her when she was moved from one account to the next.

**11.** Jeaninne Reyes, Gillam's Caucasian supervisor's, harassment and general targeting with aggressive acts towards Gillam was noticed by everyone at Cape Center Internal Medicine.

**12.** On or about April of 2012, Jeaninne Reyes' public rants and loud aggressive outbursts directed at Gillam at Cape Center were so severe that a Cape Center staff member was compelled to call LabCorp and complain. During this incident, Jeaninne Reyes made racial slurs and innuendos, for example Jeaninne Reyes referred to, "yawl's" inability to ever finish school. Reyes inquired as to why

-1-

Gillam and another African-American employee will never finish their education. After the staff complained about Jeaninne Reyes' disturbing denigration of Gillam, Jeaninne Reyes was not allowed back to the account at Cape Center.

**13.** On or about May 21, 2012, LabCorp removed Gillam from Cape Center Internal Medicine without warning or explanation. Gillam was not told where she would be going the next day to work, until late that evening. LabCorp representatives misrepresented to the account and to Gillam why she was being moved.

**14.** On or about May 22, 2012, Gillam started work at Highland OB. Jeaninne Reyes gave Gillam inaccurate information with regard to Gillam's start time.

**15.** On or about May 23, 2012, confused as to why she had been removed from the old account and if she was indeed where she was supposed to be working, Gillam called Kurt Scarfleerg, a LabCorp human resource representative. Janise Stokes walked in the new account at Highland OB and ordered Gillam off the phone, over Kurt Scarfleerg's objections. A letter in support of Gillam from Dr. Patel and the office manager was sent to LabCorp on this day. Keyette tried to discuss this move with human resources' Christine Concerta and Cawana Mitchell for approximately one month. No one would return Gillam's phone calls.

**16.** On or about early June 2012, Gillam was again moved by Jeaninne Reyes to the Patient Service Center at Robeson. Gillam was removed after only five days at the Patient Service Center at Robeson by Jeaninne Reyes.

**17.** On or about early June 2012, Gillam started work at the Carolina Urgent Care. She was there for approximately one month before Jeaninne Reyes moved her again.

**18.** On or about July 3, 2012, Gillam sent an email at 12:51 p.m. to LabCorp personnel/management informing the administration of the harassment and aggressive differential treatment Gillam was compelled to endure. Almost immediately Gillam was told to go to Keystone

-1-

Court for a meeting in which she was offered a lower position as an accessioner making much less money. It was during this meeting that Gillam notified Christine Concerta and Jeaninne Reyes, both Caucasian, she was going to file an EEOC claim based on racial and disability discrimination. Gillam was immediately removed that day, and placed at the Patient Service Center at Keystone Court. Importantly, Christine Concerta was immediately replaced by Cawana Mitchell, a black supervisor.

19. On or about July 5, 2012, Gillam filed an EEOC Charge.

20. On or about July 6, 2012, Gillam was written up for an alleged incident that occurred in late June, 2012. Cawana Mitchell and Jeaninne Reyes both came to Gillam's location to discuss the write-up with Gillam.

21. On or about July 20, 2012, Tony Melvin, an African-American, was hired and immediately replaced Jeaninne Reyes, Gillam's Caucasian supervisor, as Gillam's supervisor. Tony Melvin told Gillam that he had been "warned" about Gillam. Tony Melvin also indicated that, at times, Jeaninne Reyes was still directing his supervision of Gillam. Tony Melvin announced to Gillam that he did not marry a black woman because black women are all hard-headed. Tony Melvin is married to a Caucasian woman.

22. On or about August 21, 2012, Gillam was written up for alleged infractions that were blatantly not true or not against LabCorp's policies and procedures.

23. On or about September 10, 2012, Tony Melvin sent LabCorp an urgent message to get a password and certificate for Gillam so she could perform drug screenings and cash sales, neither of which she was trained to perform. She was being set up to fail.

24. On or about September 14, 2012, Gillam was scheduled to receive drug screening training. Almost as soon as she started training, Gillam's training was interrupted by Jeaninne Reyes who told her to stop training and to mop instead of train. Mopping was not a normal duty for Gillam. She only received 20 – 30 minutes of drug screening training, whereas her counterparts received over one week

-1-

Case 5:14-cv-00134-BO   Document 1   Filed 03/07/14   Page 5 of 9

of training. Her counterparts were allowed to postpone performing drug screenings, until they were comfortable with their performance of the drug screening tests. Gillam was not allowed the same option.

25. On or about January 15, 2013, Gillam was called into another disciplinary meeting where she was to sign a PST Error Acknowledgement. This particular type of disciplinary meeting was now commonplace. Prior to the April 2012 outbursts against Gillam by Jeaninne Reyes and Gillam's subsequent reporting, Gillam had never received a PST Error Acknowledgement. So commonplace were these types of meetings, that Gillam would bring her journal so she could keep up with the documentation of their admonishments of her. LabCorp had been denying Gillam the ability to take notes, so Gillam would sometimes bring a taperecorder. Before this particular meeting began, Gillam was made to take off her lab coat, sit her purse in the corner, and put her hands in the air, so Tony Melvin could pat her up and down her sides. Gillam objected and offered to turn her pockets out, which she did. During this meeting, she was denied the ability to take notes or record the conversation. Gillam's requests to see the applicable company policies were denied.

26. On or about January 17, 2013, Gillam was written up for the tape-recording incident above.

27. On or about January 18, 2013, due to an irregular requisition, Gillam called the Medicaid office with questions regarding the way these particular types of requisitions were to be handled. Gillam found out that those particular procedures constitute Medicaid fraud.

28. On or about February 26, 2013, the same doctor had another irregular requisition. Gillam would not perform the lab, as to perform the lab would have been Medicaid fraud. In yet another discipline meeting, Patricia Dougherty and Tony Melvin told Gillam she had to perform the tests in the manner they prescribed, as it would produce more money for LabCorp. Even after Gillam explained the fraud involved, the Defendants held firm to their directives. Gilam refused to commit fraud.

29. On or about May 29, 2013, Gillam applied for FMLA for herself and her daughter.

-1-

30. On or about June 3, 2013, Gillam's personal FMLA was approved. Gillam's daughter's FMLA claim was pending a doctor's results.

31. On or about July 26, 2013, Gillam was called into the Patient Service Center at Keystone Court, in the conference room and was terminated immediately. Gillam was told it was because of the tape-recording incident from 6 months prior (June 15, 2013).

Gillam presents a clear case of discriminatory treatment.

## IV.
## CAUSES OF ACTION

A. <u>DISCRIMINATION PURSUANT TO 42 U.S.C. §1981 AND TITLE VII</u>

32. Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporates the same herein as though fully set forth.

33. Defendants, through its agents, supervisors, or employees violated Plaintiff's civil rights in violation of 42 U.S.C. §1981 and Title VII, by intentionally interfering with Plaintiff's performance of her employment because of her race.

34. This intentional interference consisted of discrimination of a continuous nature.

35. Defendants, through its agents, supervisors, or employees discriminated against Plaintiff, which led to the loss and impairment in whole or part, of the wages, benefits, promotions, privileges, and terms and conditions of Plaintiff's employment.

36. The above-described acts on Defendants' part caused Plaintiff substantial injury and damage.

## V.
## JURY DEMAND

18. Plaintiff hereby requests a trial by jury pursuant to Rule 58 of the Federal Rules of Civil Procedure.

## VI.
## DAMAGES

19. Defendants' conduct constitutes violations of statutory law. Such unlawful conduct seriously affects Plaintiff in her occupation, trade and business. Because of Defendants' unlawful conduct, Plaintiff has suffered, suffers, and will continue to suffer humiliation, mental anxiety and stress, and other damages. Plaintiff has suffered direct injury as a proximate result of the unlawful discriminatory practices, policies and procedures of Defendants. Accordingly, Plaintiff seeks all general, special, incidental and consequential damages in an amount to be proved at trial.

20. Because of Defendants' unlawful conduct, it will be necessary for Plaintiff to retain counsel to represent her in these causes of action. Plaintiff will agreed to pay reasonable attorneys' fees for the preparation and trial of these causes, and further for any appeal thereof should it become necessary.

21. Additionally, Plaintiff has incurred out-of-pocket expenses, which include litigation costs and other expenses to preserve her ability to earn a living. Accordingly, Plaintiff seeks all general, special, incidental and consequential damages as shall be proven at trial.

22. Further, Plaintiff seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest because of the delay in receiving the damages and to avoid unjust enrichment to Defendants. Plaintiff also seeks post-judgment interest at the maximum rate allowed by law in the event that Defendants do not promptly tender damages assessed against them and to avoid unjustly enriching Defendants.

## VII.
## PRAYER

WHEREFORE, premises considered, Plaintiff prays that Defendants be cited to appear and answer herein, and that on final trial, Plaintiff have judgment against Defendants for:

a. Permanent injunction enjoining Defendants, its agents, successors, employees, and those acting in consort with Defendants from engaging in any employment practice that discriminates on the basis of race.

b. All damages to which Plaintiff may be entitled pursuant to this Complaint, or any amendment(s) thereto, including but not limited to back pay, reinstatement or front pay in lieu of reinstatement, loss of earnings in the past, loss of earning capacity in the future, loss of benefits in the past, loss of benefits in the future, statutory relief at law, and equity;

c. Compensatory damages for pain and mental suffering in the past and future;

d. Punitive damages in an amount above the minimum jurisdictional limit of the Court;

e. Reasonable attorneys' fees, with conditional awards in the event of appeal;

f. Pre-judgment interest at the highest rate permitted by law;

g. Post-judgment interest from the judgment until paid at the highest rate permitted by law;

h. Costs of court and expert witness fees incurred by Plaintiff in the preparation and prosecution of this action; and

i. Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Complaint or by any amendment hereto.

Respectfully submitted,

Keyette Gillam
Pro Se Litigant
1136 Lauren McNeil Loop
Fayetteville, North Carolina 28303

Telephone: (910) 644-2063

kogillam@yahoo.com